# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(Beckley Division)

**ERP ENVIRONMENTAL FUND, INC.**

      **Plaintiff,**

**v.**                                           **CIVIL ACTION NO. _____**

**WEST VIRGINIA DEPARTMENT OF**
**ENVIRONMENTAL PROTECTION and**
**RANDY C. HUFFMAN, in his capacity**
**as Cabinet Secretary for the**
**West Virginia Department of**
**Environmental Protection,**

      **Defendants.**

## AFFIDAVIT OF DAVE HETTINGER

STATE OF West Virginia

COUNTY OF Raleigh

      After being duly sworn, the affiant states as follows:

      1.      My name is Dave Hettinger.  I am over 21 years of age, have never been convicted of a felony, and am competent to depose for purposes of affirming the truth of statements contained in this affidavit.

      2.      I either have personal knowledge of the matters set forth in this affidavit or have affirmed with others and, if called to testify, I could competently testify to the matters set forth herein.

      3.      I am employed by ERP Environmental Fund, Inc.  My title is Manager of Engineering.

      4.      Pursuant to a re-organization plan approved by the Federal Bankruptcy Court for the Eastern District of Virginia on October 9, 2015, the Virginia Conservation Legacy Fund and

7136910

its affiliate (collectively, "VCLF") agreed to enter a transaction to transfer certain assets of a debtor in a bankruptcy, Eastern Associated Coal, LLC ("Eastern").

5.      As part of the approved transaction, a certain permit to conduct surface mine operations at Kopperston Number 4, atop Coal Mountain, in Wyoming County, West Virginia, permit O-0019-83 (the "Permit") was to be transferred to ERP Environmental Fund, Inc.

6.      ERP Environmental Fund, Inc. is a West Virginia non-profit corporation.  It is wholly owned by VCLF Land Trust.

7.      On March 4, 2016, the West Virginia Department of Environmental Protection ("WVDEP") contacted ERP to issue an order to provide water replacement pursuant to the West Virginia Surface Coal Mining and Reclamation Act for forty-five residents of Wyoming County, West Virginia.  A copy of the WVDEP's order is attached as Exhibit 1.

8.      The WVDEP represented that its water replacement order was based upon an order it had received from the Circuit Court of Wyoming County, West Virginia.

9.      The order from the Circuit Court of Wyoming County and, in turn, the WVDEP's order, require ERP to commence water replacement of drinking water within twenty-four hours of receipt of the order, and to provide temporary potable water for household and homestead use within seventy-two hours of receipt of the order.

10.     ERP was not apprised of the action pending in the Circuit Court of Wyoming County and was not given an opportunity to respond to the claims stated by the Petitioners who filed the action.

11.     ERP has incurred substantial costs to comply with the WVDEP's order and will continue to incur substantial costs as a going concern *per diem*, insofar as the order does not have an express or implied termination date.

12.     The Circuit Court of Wyoming County also did not require the posting of a bond to secure the order, and ERP does not have a basis to recover its costs for providing water to the extent the order is ultimately vacated.

13.     It is my understanding that the WVDEP has not found any evidence that the impoundment which is subject to the Permit, claimed to be the source of water contamination, has actually contaminated water wells of residents in the vicinity, and the WVDEP has not concluded that there has been any violation of state law in relation to the impoundment, nor any corrective action identified to remedy the claimed contamination.

14.     Despite the WVDEP's findings and conclusions with respect to water contamination claims, ERP respects the authority of the WVDEP to issue water replacement orders and intends to continue complying with WVDEP's order unless and until it is vacated.

15.     However, because the WVDEP has not identified any water contamination which can be sourced to the impoundment, ERP is unable to remedy the claimed contamination. Nor, as a practical matter, can ERP bring the permitted premises into "compliance" with a standard that has not been found to have violated.

16.     With no recourse for the recovery of costs, and no corrective action identified to remedy the claimed contamination, ERP will continue to incur substantial costs to provide water to residents unless and until the orders are vacated.

17.     As of the date of this Affidavit, ERP has incurred costs to supply drinking water in accordance with the WVDEP's order.

18.     In order to comply with the WVDEP's orders regarding household water use, ERP has received quotes from Farley Drilling, Inc. for the delivery of potable water and installation of temporary water tanks. According to the proposals, costs will include $26,000.00

per month for delivery services to twenty-six residential locations, and a one-time equipment cost for the purchase and installation of twenty-six 1,100 gallon water tanks, at $4,000.00 per tank. These cost proposals are attached as Exhibits 2 and 3.

19.    ERP is calculating its costs incurred to date and will provide a summary of those costs, along with an estimate of future costs, when this matter is brought on for decision by the Court. Based upon the proposals described above, ERP's preliminary estimate for the next phase of water replacement is approximately $100,000 for set up and installation of water tanks, and $320,000 or more in water delivery service costs annually. The next phase for the provision of permanent water replacement has been broadly estimated to cost approximately $7,000,000.

Further the affiant sayeth naught.

_____

ERP Environmental Fund, Inc.

Taken, subscribed and sworn to before me this 16th day of March, 2016.

My commission expires: May 2, 2021.

[Notarial Seal]

OFFICIAL SEAL
Notary Public, State of West Virginia
SANDY L PLUMLEY
238 Country Roads Estates
Shady Spring, WV  25918
My commission expires May 2, 2021

_____
Notary Public

4

# AFFIDAVIT EXHIBIT 1

MR-6
ERIS

**West Virginia Department of Environmental Protection**
**MR-6 MINE INSPECTION REPORT**

Page 1 of 1

| PERMIT NUMBER | INSPECTION | | | | MINE STATUS | PHOTOS | BLASTING | |
| | DATE | TIME | REASON | TYPE | | | Last 30 Days? | Ins. Req'd? |
|---|---|---|---|---|---|---|---|---|
| O001983 | 03/04/2016 | 10:50 | PO | P | A3 | No | No | No |

| | | | |
|---|---|---|---|
| PERMITTEE NAME | EASTERN ASSOCIATED COAL, LLC | MSHA # | 40049 |
| OPERATOR NAME | | MR-19 DATE | |
| NPDES # | WV0041122   NPDES EXPR DATE   09/12/2020 | PERMIT EXPR DATE | WAIVED |

| PERMIT ACRES | 265.70 | TOTAL DISTBD | 230.00 | RECLMD | 230.00 | ANCIL-LARY | 0 | UNRECLMD | 0 |
|---|---|---|---|---|---|---|---|---|---|

DATES: PH I _____   PH II _____        LAST AUG SEED _____        MR-8 _____

| LAST INSP DATE | 01/13/2016 | TYPE | A | BOND INC | 2 | INC BONDED ACRES | 265.70 | CUR IBR# | 2 | CUR REV# | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|

EXPR DATES: INACT _____   EMER RESP PLAN _____   INS _____   BLAST AD _____

TIME USED (HRS)==>  PERMIT REVIEW  0.50   INSPECT  0.00   TRAVEL  0.75   REPORT  0.50

**INSPECTION COMMENTS**

In accordance with Court Order granted by Chief Judge Warren R. McGraw of the Circuit Court of Wyoming County, West Virginia in Civil Action No. 15-C-176 and in accordance with West Virginia Code 22-3-24(d) company must provide emergency and temporary water replacement to Petitioners in accordance with provisions set forth in the Order. Copy of Order attached.

| ENFORCEMENT STANDARD | EVALUATION | VIO# | ENFORCEMENT STANDARD | EVALUATION | VIO# |
|---|---|---|---|---|---|
| 0100  Distance Prohibited............... | | | 0200  Exceeding Limits................. | | |
| 0300  Signs and Markers............... | | | 0400  Sediment Control.............. | | |
| 0500  Design Certification.............. | | | 0600  Effluent Limits................. | | |
| 0700  Surface Water.................... | | | 0800  Ground Water................. | | |
| 0900  Blasting Procedures............ | | | 1000  Haul Roads................... | | |
| 1100  Refuse Impoundments........ | | | 1200  Topsoil Handling............ | | |
| 1300  Backfill / Grading.............. | | | 1400  Reclamation Schedule....... | | |
| 1500  Revegetation Requirements...... | | | 1600  Disposal of Excess Spoil...... | | |
| 1700  Highwall Elimination........... | | | 1800  Downslope Spoil Disposal...... | | |
| 1900  Postmining Land Use.......... | | | 2000  Ceased Mining Temporarily...... | | |
| 2100  Acid bearing /Toxic Material....... | | | 2200  Method of Operations......... | | |
| 2300  Change of Operator............ | | | 2400  Permit Conditions............ | COM | |
| 2500  Diversions and Drainage Control.. | | | 2600  Fugitive Dust Control........ | | |
| 2700  Subsidence Plan............... | | | 2800  Insurance Current........... | | |
| 2900  Bonding Current............... | | | 3000  Other Conditions............ | | |

**WATER QUALITY TESTS**

| Structure ID | Outfall | pH | Fe | Mn | Al | No Flow | Not Const. | Treatment |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | |
|---|---|
| AUTH. COMPANY REPRESENTATIVE | Erman Moore   *Delivered to Erman Moore* |
| DELIVERY METHOD / DATE TIME | Hand 3/4/2016 10:53:00 |
| CERTIFIED MAIL NUMBER | |
| ADDRESS | PO BOX 1001, 63 CORPORATE CENTRE DR STE 411, SCOTT DEPOT, WV 25560 |
| WV DEP REP. | John Waggoner   *[signature]* |

IN THE CIRCUIT COURT OF WYOMING COUNTY, WEST VIRGINIA

AVARY H. & BETTY JO BAILEY,
JASON A. & RONCHESKI BAILEY,
NEWMAN & KATHRINE BROWN,
ALGIE D. & KATHERINE COOK,
ALGIE R. & PEGGY ANN COOK,
DENNIS L. COOK, JR. & MICHELE COOK,
DENNIS L. COOK, SR. & BRENDA K. COOK,
WILLIAM C. & REGINA COOK,
WILLIAM & STEPHANIE COOK,
DONNA FRALEY,
MAYBETH FRALEY,
WESTLEY & JUDY FRALEY,
DOYLE LEE & PHYLLIS JOHNSON,
GLEN & MARY JOHNSON,
ELIZABETH L. KENNEDY,
WILLIAM D. & JENNY LAFFERTY,
MICHAEL E. MARCUM,
PAUL MARCUM,
HELEN M. MCGINNIS,
ONNIE & VIRGINIA PAYNTER,
EARL R. PELPHREY,
LARRY & BECKY REED,
EVERETT & FREDA SMITH,
WILLIAM L. & JESSICA N. STEPP,
JACQUELYN A. WHITLEY,
BILLY RAY WILLARD,
TEDDY & DOROTHY WYKLE,
     Petitioners,

v.                           Civil Action No. 15-C-176
                                   Chief Judge Warren R. McGraw

WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION and
RANDY C. HUFFMAN, in his role as Cabinet
Secretary for the West Virginia Department of
Environmental Protection,
     Respondents.

## ORDER GRANTING THE VERIFIED
## PETITION FOR WRIT OF MANDAMUS

On December 2, 2015, came Petitioners, through counsel Kevin W. Thompson and David

R. Barney, Jr. and Respondents West Virginia Department of Environmental Protection

(WVDEP) and WVDEP Cabinet Secretary Randy C. Huffman, through counsel Jason E. Wandling, for a hearing regarding Petitioners' September 16, 2015, Verified Petition for Writ of Mandamus for an Order compelling Respondents to issue a water replacement Order for Petitioners, pursuant to West Virginia Code § 22-3-24.

**WHEREUPON,** the Court, after reviewing the pleadings, hearing testimony, reviewing the hearing exhibits and the arguments of counsel, makes the following findings of facts and conclusions of law:

1.     Avary H. and Betty Jo Bailey are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern Associated Coal, LLC (Eastern), which they allege contaminated their water well. Petition at ¶ 1.

2.     Jason A. and Roncheski Bailey are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 2.

3.     Newman and Katherine Brown are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 3.

4.     Algie D. and Katherine Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 4.

5.      Algie R. and Peggy Ann Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 5.

6.      Dennis L. Cook, Jr. and Michele Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 6.

7.      Dennis L. Cook, Sr. and Brenda K. Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 7.

8.      William C. and Regina Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 8.

9.      William and Stephanie Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 9.

10.     Donna Fraley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well.  Petition at ¶ 10.

3

11.    Maybeth Fraley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 11.

12.    Westley and Judy Fraley are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Westley Fraley also was a former employee of Eastern and provided testimony at the hearing. *See* Tr. at pgs. 28-52. Petition at ¶ 12.

13.    Doyle Lee and Phyllis Johnson are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 13.

14.    Glen and Mary Johnson are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 14.

15.    Elizabeth L. Kennedy is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 15.

16.    William D. and Jenny Lafferty are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 16.

17.    Michael E. Marcum is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well.  Petition at ¶ 17.

18.    Paul Marcum is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well.  Petition at ¶ 18.

19.    Helen M. McGinnis is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well.  Petition at ¶ 19.

20.    Onnie and Virginia Paynter are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well.  Petition at ¶ 20.

21.    Earl R. Pelphrey is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated his water well.  Petition at ¶ 21.

22.    Larry and Becky Reed are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well.  Petition at ¶ 22.

23.    Everett and Freda Smith are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted

impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 23.

24.     William L. and Jessica N. Stepp are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 24.

25.     Jacquelyn A. Whitley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 25.

26.     Billy Ray Willard is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well. Petition at ¶ 26.

27.     Teddy and Dorothy Wykle are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 27.

28.     The West Virginia Department of Environmental Protection (WVDEP) is a political sub-division of the State of West Virginia and it is the agency charged with enforcement of the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA), West Virginia Code § 22-3- 1, *et seq.*

29.     Randy C. Huffman is the Cabinet Secretary for the WVDEP and he is charged with enforcement of the WVSCMRA, West Virginia Code § 22-3- 1, *et seq.*

30.     Eastern, is a West Virginia company and it is the permittee authorized by Respondent WVDEP to conduct surface mine operations, Kopperston Number 4, atop Coal Mountain, in Wyoming County, West Virginia, pursuant to permits O-0019-83, P-400111, U-0047-83, U-0143-82 and U-4003-94. *See* Petitioners' Hearing Exhibits 1, 4, 5 and 6 and Tr. at pg. 29.

31.     Pursuant to these permits, Eastern built, operated and later filled in a large impoundment near the head of Crany Branch which is a tributary of Clear Fork. Eastern brought this area under permit in 1983. Tr. at pg. 126. Mr. Fraley, a former Eastern employee, testified that the prep plant continued to inject slurry until it was closed in about August of 1998. *See* Tr. at pgs. 35-48. The permitted fill for this site was reclaimed in the late 1990's. Tr. at pg. 103.

32.     Notwithstanding, adjacent to Eastern's impoundment is an abandoned slate dump which is a pre-WVSCMRA site, meaning it existed prior to enactment of the 1977 statute and was not brought under Eastern's permit. *See* Tr. at pgs. 56-59 and 123-135.  However, Mr. Fraley, who was the UMWA chairman of the Mine Committee and safety committee at the site, testified that Eastern used this alleged slate dump until 1985. *See* Tr. at pgs. 35-41.

33.     Petitioners allege that they depend on water wells for all of their domestic needs including drinking, bathing, cooking, cleaning and laundry.  Petitioners allege that, over the years, the water quality of the wells of Petitioners and their neighbors degraded.

34.     In the Verified Petition, Petitioners alleged claims and sought injunctive relief, pursuant to the Citizen's Suit Provision of the WVSCMRA, West Virginia Code § 22-3-25(a)(2) because Respondents failed to perform non-discretionary duties.  Petition at ¶s 53-58.  In addition, Petitioners petitioned this Court for a Writ of Mandamus, pursuant to West Virginia Code § 53-1-2 and Article VIII, Section 6, of the West Virginia Constitution.  Petition at ¶s 59-

65.   Petitioners also allege that there are no other adequate means for them to obtain the desired relief, other than through the Verified Petition.  Petition at ¶ 65.

35.   Petitioners allege that Respondents have a legal duty, pursuant to West Virginia Code § 22-3-17(a), to do that which Petitioners seek to compel through this Verified Petition. Petition at ¶s 55-56 and 64.  Namely, to force Eastern, as a term of its permit, to provide and honor Petitioners' right of water replacement pursuant to West Virginia Code § 22-3-24.  *Id.* West Virginia Code § 22-3-17(a) mandates that the Director "shall" issue a Notice of Violation if an operator is not in compliance with a provision of a statute, rule or permit which constitutes a non-discretionary duty.  *Id.*

36.   Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water sources, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation to Eastern, pursuant to West Virginia Code § 22-3-17(a), for Eastern's violation of the water replacement provisions of West Virginia Code § 22-3-24.  Petition at ¶s 57 and 64.

37.   Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water source, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation for Eastern's violation of the General Environmental Performance Standards set forth in West Virginia Code § 22-3-13(b)(10) which require the permittee, being Eastern, to conduct operations in such a manner as to minimize the impact on the hydrologic balance.  *Id.*

38.   Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water source, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation for Eastern's failure to protect offsite water sources as set forth in West Virginia Code of State Regulations § 32-2-14.5.  *Id.*

8

39.     With respect to the specific facts of the case, on November 4, 2011, April 13, 2013 and May 22, 2015, Petitioners filed notices with Respondent WVDEP, pursuant to West Virginia Code § 22-3-24 and § 22-3-25, alleging that Eastern's impoundment contaminated their water supplies. *See* SCMRA Notices attached to the Verified Petition as "Exhibit 1;" *see also* Petitioners' Hearing Exhibits 3, 4 and 5 and Tr. at pg. 33. The proceedings were stayed because of the bankruptcy of Patriot Coal Corporation, Eastern's parent company. *See* Tr. at pgs. 10, 12, 13, 53-56 and Petitioners' Hearing Exhibit 9.

40.     In response, the WVDEP conducted an investigation that included two (2) water sampling expeditions in 2011 and 2012. *See* WVDEP water testing results attached to the Verified Petition as "Exhibit 2;" *see also* Petitioners' Hearing Exhibits 10 and 11 and Tr. at pgs. 59 and 70.

41.     Additionally, representatives of the WVDEP accompanied Petitioner Westley Fraley, Petitioners' expert witness D. Scott Simonton, PE, PhD and counsel on an inspection of the permitted impoundment which revealed several areas where contaminated groundwater, with iron and aluminum, were leaching out of the side of the impoundment. *See* Tr. at pgs. 42-47, 87 and 118-122; *see also* Petitioners' Hearing Exhibits 7 and 10.

42.     WVDEP Environmental Specialist III Dustin Johnson testified that there were numerous exceedances above the applicable Environmental Protection Agency (EPA) drinking water standards. *See* Tr. at pgs. 59-76, 119-122; *see also* Petitioners' Hearing Exhibit 10.

43.     The WVDEP's testing revealed that some of the Petitioners had well water results exceeding both the applicable EPA drinking water standards and the expected natural background levels anticipated for the area.

44.     According to Mr. Johnson, Petitioner Elizabeth L. Kennedy's well water contained iron more than ten times above and exceedances of manganese above the applicable EPA drinking water standards. Petitioner Helen M. McGinnis well water contained iron more than ten times and manganese at three times above the applicable EPA drinking water standards. Petitioners Avary and Betty Jo Bailey's water contained iron more than five times and manganese at four times above the applicable EPA drinking water standards.  Petitioners Doyle Lee and Phyllis Johnson's water contained iron more than thirty times above the applicable EPA drinking water standards.   Petitioners William and Regina Cook's water contained iron more than forty times above the applicable EPA drinking water standards.   Petitioners Westley and Judy Fraley's well water contained iron more than five times and manganese at four times above the applicable EPA drinking water standards.   Additionally, The Fraley's well tests revealed elevated levels of arsenic.  Petitioner Paul Marcum's well water contained an exceedance of iron and manganese at three times above the applicable EPA drinking water standards.  Petitioners Newman and Kathrine Brown's water contained iron more than twenty times above the applicable EPA drinking water standards.   Petitioner Jacquelyn A. Whitley's water contained iron more than three times above the applicable EPA drinking water standards.  *Id.*

45.     In addition, nearby residents Jerry and Brenda Hutchinson (non-Petitioners) live the closest to the subject impoundment.  The Hutchison's well water results are among the worst in the area, testing greater than thirty times higher for iron and greater than twenty times higher for manganese than the applicable EPA drinking water standards.   Additionally, testing of the Hutchison's well revealed elevated levels of lead and arsenic.  *Id.*  Similarly, the well water of a local church in Crany (a non-Petitioner) contained an exceedance of iron at eight times above the applicable EPA drinking water standards.  Tr. at pg. 67.

46.     Furthermore, in March of 2011, Petitioner Donna Fraley, during a groundwater inventory, reported that her water quality was "good" and the contemporaneous water sampling at that time indicated a low level of iron in her well water.  However, the 2012 water sampling, one year later, indicated that Ms. Fraley's water contained iron more than ten times above the applicable EPA drinking water standards.  *See* Tr. at pgs. 70-75 and 94; *see also* Petitioners' Hearing Exhibits 10 and 11.

47.     Notwithstanding, on May 22, 2013, the WVDEP terminated its complaint investigation in complete abrogation of all of the scientific evidence uncovered by the sampling and testing events conducted in the area without ordering Eastern to provide replacement water pursuant to West Virginia Code § 22-3-24 in the form of emergency replacement water, temporary replacement water and permanent water.  *See* WVDEP complaint termination attached to the Verified Petition as "Exhibit 5" and Petitioners' Hearing Exhibit 9.  According to Mr. Johnson, there was nothing to connect the exceedances to a violation.  *See* Tr. at pgs. 56-59 and 86; Petitioners' Hearing Exhibit 9.  Mr. Johnson explained that, after consulting with inspectors and others, he believed that the abandoned slate dump adjacent to Eastern's impoundment was the cause of the water standard exceedances, not anything related to Eastern's permit, including the impoundment.  *See* Tr. at pgs. 56-59 and 123-135.  Mr. Johnson also did not believe there was any evidence of seepage from the impoundment which would contaminate the Petitioners' well water.  Tr. at pg. 124.

48.     According to Mr. Johnson, his position was justified because the water testing at outlet 13, the outlet for the surface water coming off the face of the impoundment, was in compliance with applicable standards.  Tr. at pgs. 67-68 and 123.  However, the water coming from this outlet is treated before it flows out of the outlet.  *Id.*  Dr. Simonton testified that there

11

have been violations from this outlet and not all of the water in the system is going through this outlet. Tr. at pgs. 88-89. In addition, the water from this outlet is not drinkable, even when in compliance, because compliance only concerns the ability to treat the water. *Id.*

49.     Mr. Johnson's report also indicated that the contamination may not be mining related because of the sulfate levels detected in the water. *See* Petitioners' Hearing Exhibit 9 and Tr. at pg. 86.

50.     With respect to the history of the site, Mr. Johnson testified that Eastern, with the exception of the abandoned slate dump, was brought under its permit in about 1983. *See* Tr. at pg. 126. However, Mr. Johnson acknowledged that it would be a violation of the permit if Eastern were to have worked outside of the permitted boundary which was described as a "wild cat" permit where there was activity on an area that was not permitted by the operator. *See* Tr. at pgs. 130-131. Mr. Fraley testified that when he was employed at Eastern and was the UMWA chairman of the Mine Committee and safety committee, Eastern used this slate dump until 1985. *See* Tr. at pgs. 35-41. As such, there was testimony that Eastern violated its permit by working outside of the permitted boundary, by Mr. Johnson's own testimony, in the identified area of contamination.

51.     D. Scott Simonton, PE, PhD, is an environmental engineering professor at Marshall University who was retained by the Petitioners. Dr. Simonton was recognized by the Court, without any objection, as an expert in the fields of environmental engineering & groundwater contamination related to coal mining. *See* Tr. at pgs. 77-81 and Petitioners' Hearing Exhibit 12.

52.     Dr. Simonton attended each WVDEP testing event, interviewed all of the Petitioners and attended a conference with WVDEP officials where he explained the mechanisms

by which the subject abandoned impoundment contaminated Petitioners well water. According to Dr. Simonton, Petitioners' well water was contaminated, in part, by Eastern's abandoned impoundment. *See* Report of D. Scott Simonton, PE, PhD, attached to the Verified Petition as "Exhibit 3."

53.     Dr. Simonton opined that the impoundment and the slate dump contributed to the groundwater contamination, but he was not able to articulate any percentage of fault for either structure. Tr. at pgs. 99-108. However, Dr. Simonton opined that the impoundment has a greater mass and area than the slate dump which creates a greater potential for impact. *Id.* Dr. Simonton noted that the slate dump was the greater cause of surface water contamination, but that did not correspond with the groundwater contamination. *Id.* According to Dr. Simonton, the spongy nature of the top of the impoundment allows contaminates to infiltrate the groundwater to a greater degree than the slate dump. *Id.* Consequently, Dr. Simonton opined that the water contamination experienced by Petitioners related to a permit condition which should have been addressed by the Respondents when the Petitioners first made their complaints. *Id.*

54.     Dr. Simonton further explained that the WVDEP testing data indicates surface water quality is degraded significantly by elevated levels of heavy metals in waters downstream from the impoundment as opposed to waters upstream from the impoundment indicating a negative influence exerted on surface water by the impoundment. *See* Tr. at pgs. 59-76 and 81-114; *see also* Petitioners' Hearing Exhibit 10. The levels of sulfates, iron and manganese in the water are far above background which is indicative of a mining impact and consistent with contamination emanating from the permitted impoundment. Tr. at pgs. 95-97.

55.     According to Dr. Simonton, the water generally is not potable.  *See* Tr. at pg. 81.
Slurry is in the system because of the interconnectivity of the system.  Tr. at pgs. 89-90 and 123-
124.  Hydraulic head pressure is created from Eastern's impoundment which then forces water to
flow in a northwest direction from the impoundment toward the Petitioners' homes and water
wells.  Tr. at pgs. 89-93 and 102.  Dr. Simonton explained that the surface water (the creek) and
groundwater intermingle, but the surface water is not used by the Petitioners and it does not
provide any information about the system.   Tr. at pgs. 95-97.  The issue of concern is the
hydraulic pressure and the disruption of the hydraulic valves which are permit conditions.  *See
Id.*  To a reasonable degree of scientific certainty, Dr. Simonton opined that based upon the
mining history, the sample results, the odor of the water and testimony of the witnesses indicated
that Eastern's impoundment and its activities impacted the hydrologic balance which necessitates
Petitioners' need for a replacement water source.  *See Id.*

56.     With respect to sulfate levels, Dr. Simonton further explained that the sulfate
levels detected in the water samples are an indicator of mining impact.   Tr. at pgs. 82-87 and
109-113.  According to Dr. Simonton, who has published an article on hydrogen sulfide, sulfate
will precipitate out of the system and will be transformed or reduced to sulfide which then will
become a solid or gas.  *Id.*  Thus, the heavy metals in the well water interact with iron and sulfate
reducing bacteria which releases malodourous toxic hydrogen sulfide gas into the Petitioners'
homes.  *Id.*  In fact, Mr. Fraley produced a bottle of water from his well, Petitioners' Hearing
Exhibit 2, which Mr. Fraley and Dr. Simonton smelled during their respective testimonies and
confirmed the odor of hydrogen sulfide.  *See* Petitioners' Hearing Exhibit 2 and Tr. at pgs. 30-33
and 85.  Besides having a noxious odor, hydrogen sulfide also has neurotoxic properties.[1]  Tr. at

---

[1]     Stephen King, PhD, a toxicologist retained by Petitioners, issued a report explaining the health and
cancer risks associated with using the well water in the affected area, including a risk of cancer coming from the

pgs. 82-87 and 109-113. Dr. Simonton believed the presence of the hydrogen sulfide gas is an indicator of Eastern's mining impact on Petitioners' water sources, even though the level of sulfate concentration may not have exceeded any applicable standard.

57.     While Respondents dispute that Petitioners have a clear and indisputable right to the issuance of the writ, West Virginia's mining laws make it clear that citizens living near permitted coal mining operations have an indisputable right to water replacement if there is evidence that the permitted mine contaminated their groundwater. In this case, Petitioners' evidence of contamination demonstrates that Eastern's permitted mining operations impacted their sources of water. *See* Tr. at pgs. 136-137. The contamination emanating from Eastern's permitted impoundment negatively impacted Petitioners' ability to use their well water safely for domestic purposes.

58.     Therefore, the Court hereby **FINDS** that, based upon expert witness testimony, the evidence adduced in this case warrants the allegations of the Petitioners. The Court believes that Respondents, in accordance with West Virginia Code § 22-3-24(d), should require Eastern to provide emergency water and temporary water replacement to Petitioners until such time as Eastern can find a permanent replacement water supply or cause the extension of municipal water line to Petitioners' home.

59.     Moreover, to the extent Petitioners are seeking injunctive relief, the Court **FINDS** that Petitioners have met their burden for injunctive relief. Based upon the foregoing, the Court **FINDS** that (1) there is a likelihood of irreparable harm to Petitioners without the injunction, (2) there is a minor or *de minimis* likelihood of harm to Respondents with an injunction; (3) Petitioners' have a likelihood of success on the merits; and (4) there public interest in upholding

---

elevated levels of arsenic and lead in the water. *See* Report of Stephen King, PhD, attached to the Verified Petition as "Exhibit 4 (at ¶ 46)."

West Virginia's mining laws. *See Jefferson Co. Bd. of Educ. v. Jefferson Co. Educ. Assoc.*, 183 W.Va. 15, 24, 393 S.E. 2d 653, 662 (1990) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985)); *See also Camden-Clark Mem. Hosp. Corp. v. Turner*, 212 W.Va. 752, 757, 575 S.E.2d 362, 367 (2002).

      60.      The Court believes that emergency water replacement water typically is provided in five-gallon jugs for drinking and cooking purposes. *See generally Clifford Belcher, et al. v. Dynamic Energy, Inc., et al.*, Wyoming Co. CAN 14-C-67 (Order entered on December 2, 2014).

      61.      The Court believes that temporary replacement water typically takes the form of a 1,500 gallon tank plumbed into homes for bathing, laundry and dishwashing purposes. *See generally Clifford Belcher, et al. v. Dynamic Energy, Inc., et al.*, Wyoming Co. CAN 14-C-67 (Order entered on December 2, 2014).

      62.      The provision of a permanent, safe, clean water source may be achieved easily because there is a local city water line less than one-quarter mile from the residence of Petitioners Avary and Betty Jo Bailey.

      **WHEREFORE**, based upon the foregoing, the Court is of the opinion to and hereby does **GRANT** Petitioners' Verified Petition for Writ of Mandamus. Accordingly, Respondents, pursuant to West Virginia Code § 22-3-24(d), **SHALL** require Eastern to provide emergency water and temporary water replacement to Petitioners until such time as Eastern can establish a permanent water supply for them. Furthermore, the Court **ORDERS** and **DIRECTS** as follows:

      1.      That within twenty-four (24) hours of notice of this Order, Respondents shall order Eastern to provide emergency drinking water to each Petitioner for family and domestic use.

2.      That within seventy-two (72) hours of notice of this Order, Respondents shall order Eastern is to provide temporary potable water for use by Petitioners in their households and homesteads.

3.      That counsel for the parties are to cooperate on the details for the provision of replacement water.

4.      That Petitioners are entitled to the peaceful enjoyment of their homes and, in accordance with West Virginia Code § 22-3-25(d), no bond shall be required of Petitioners.

All objections and exceptions to this Order are noted and preserved for the record.

This matter otherwise is continued for further proceedings before the Court regarding Petitioners' attorney fees and expenses.

The Clerk is **ORDERED** to send certified copies of this Order to all parties of record.

Entered on this the _____ day of _____, 2016.


_____
**THE HONORABLE WARREN R. MCGRAW**
**Chief Judge, 27th Judicial Circuit**

17

Prepared By:

Kevin W. Thompson, Esquire (W.Va. Bar No. 5062)
David R. Barney, Jr., Esquire (W.Va. Bar No. 7958)
Thompson Barney
2030 Kanawha Boulevard, East
Charleston, West Virginia 25311
Telephone: (304) 343-4401
Facsimile: (304) 343-4405
          *Counsel for Petitioners*

Reviewed and Objected to By:

Jason Q. Wandling, Esquire (W.Va. Bar No. 9259)
West Virginia Department of Environmental Protection
Office of Legal Services
601 57th Street, SE
Charleston, West Virginia 25304
Telephone: (304) 926-0499, ext. 1446
Facsimile: (304) 926-0461
          *Counsel for Respondents*

18

# AFFIDAVIT EXHIBIT 2

Page No. _____ of _____ Pages

## Farley Drilling, Inc.
P. O. Box 866
Pineville, WV 24874
(304) 732-7826
Contractors Lic. # WV005144

# PROPOSAL AND ACCEPTANCE

| PROPOSAL SUBMITTED TO | PHONE | DATE |
|---|---|---|
| ERP Environmental | | 3-14-2016 |

| STREET | JOB NAME |
|---|---|
| P.O. Box 305 | Delivery Service of Potable Water |

| CITY, STATE AND ZIP CODE | JOB LOCATION |
|---|---|
| Madison, WV 25130 | Craney, WV |

| ARCHITECT | DATE OF PLANS | | JOB PHONE |
|---|---|---|---|
| Duane Farley | 2016 | Hauler Registration #PWH-002 | 304-673-0688 |

We hereby submit specifications and estimates for: Delivery service of potable water to 26 residents at Craney, WV.

Farley Drilling, Inc., will furnish all equipment and potable fill lines from water truck to temporary water tanks. Farley Drilling will include a labor maintenance program for service calls on temporary tanks to all household connections and cleaning of tanks as needed.

ERP Environmental will be responsible for providing a 2" tap at the end of the PSD water line in Craney Hollow. ERP Environmental will also be responsible for the monthly water bill associated with this water tap.

**We Propose** hereby to furnish material and labor — complete in accordance with above specifications, for the sum of:

Twenty Six Thousand Dollars Per Month _____ dollars ($ 26,000.00 _____ ).

Payment to be made as follows:

Prepaid Monthly

All material is guaranteed to be as specified. All work to be completed in a workman-like manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized
Signature _____

Note: This proposal may be withdrawn by us if not accepted within 30 days.

**Acceptance of Proposal** - The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Signature _____

Date of Acceptance _____

Signature _____

# AFFIDAVIT
# EXHIBIT 3

Page No.               of                Pages

## Farley Drilling, Inc.
P. O. Box 866
Pineville, WV 24874
(304) 732-7826
Contractors Lic. # WV005144

# PROPOSAL AND ACCEPTANCE

| | | |
|---|---|---|
| PROPOSAL SUBMITTED TO<br>ERP Environmental | PHONE | DATE<br>3-14-16 |
| STREET<br>P.O. Box 305 | JOB NAME<br>Installing Temporary Water Tanks | |
| CITY, STATE AND ZIP CODE<br>Madison, WV 25130 | JOB LOCATION<br>Craney, WV | |
| ARCHITECT<br>Duane Farley | DATE OF PLANS<br>2016 | JOB PHONE<br>304-673-0688 |

We hereby submit specifications and estimates for: Installing pressurized pumping systems for 26 residents in Craney, WV.

Farley Drilling,. Inc. will furnish all material, equipment, and labor required for installation of systems.
Installations includes camlocks and bulk head fittings for fill line at the tank. All tanks and piping to the
homes will be winterized. ERP Environmental will furnish 1,100 gallon tanks for each home.


***NOTE: All material used will have a one year warranty (labor not included)
        Pumps & pressure tanks will have a two year warranty ( labor not included)
***ERP Environmental will be responsible for reclaiming residents property due to installation of tanks and
and water lines.

**We Propose** hereby to furnish material and labor — complete in accordance with above specifications, for the sum of:

Four Thousand Dollars Per Tank

dollars ($ 4,000.00 ).

Payment to be made as follows:
Prepaid

All material is guaranteed to be as specified. All work to be completed in a workman-like manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized
Signature _____

Note: This proposal may be
withdrawn by us if not accepted within _____ days.

**Acceptance of Proposal** - The above prices, specifications
and conditions are satisfactory and are hereby accepted. You are authorized
to do the work as specified. Payment will be made as outlined above.

Signature _____

Date of Acceptance _____

Signature _____