# EXHIBIT 2

MR-6

ERIS

West Virginia Department of Environmental Protection

MR-6 MINE INSPECTION REPORT

Page 1 of 1

| PERMIT NUMBER | INSPECTION | | | | MINE STATUS | PHOTOS | BLASTING | |
| | DATE | TIME | REASON | TYPE | | | Last 30 Days? | Ins. Req'd? |
|---|---|---|---|---|---|---|---|---|
| O001983 | 03/04/2016 | 10:50 | PO | P | A3 | No | No | No |

| PERMITTEE NAME | EASTERN ASSOCIATED COAL, LLC | | MSHA # | 40049 |
|---|---|---|---|---|
| OPERATOR NAME | | | MR-19 DATE | |
| NPDES # | WV0041122 | NPDES EXPR DATE 09/12/2020 | PERMIT EXPR DATE | WAIVED |

| PERMIT ACRES | 265.70 | TOTAL DISTBD | 230.00 | RECLMD | 230.00 | ANCIL-LARY | 0 | UNRECLMD | 0 |
|---|---|---|---|---|---|---|---|---|---|

| DATES: PH I | | PH II | | LAST AUG SEED | | MR-8 | |
|---|---|---|---|---|---|---|---|
| LAST INSP DATE | 01/13/2016 | TYPE | A | BOND INC | 2 | INC BONDED ACRES | 265.70 | CUR IBR# | 2 | CUR REV# | 9 |
| EXPR DATES: INACT | | EMER RESP PLAN | | INS | | BLAST AD | |

| TIME USED (HRS)==> | PERMIT REVIEW | 0.50 | INSPECT | 0.00 | TRAVEL | 0.75 | REPORT | 0.50 |
|---|---|---|---|---|---|---|---|---|

**INSPECTION COMMENTS**

In accordance with Court Order granted by Chief Judge Warren R. McGraw of the Circuit Court of Wyoming County, West Virginia in Civil Action No. 15-C-176 and in accordance with West Virginia Code 22-3-24(d) company must provide emergency and temporary water replacement to Petitioners in accordance with provisions set forth in the Order. Copy of Order attached.

| ENFORCEMENT STANDARD | | EVALUATION | VIO# | ENFORCEMENT STANDARD | | EVALUATION | VIO# |
|---|---|---|---|---|---|---|---|
| 0100 | Distance Prohibited...................... | | | 0200 | Exceeding Limits......................... | | |
| 0300 | Signs and Markers...................... | | | 0400 | Sediment Control......................... | | |
| 0500 | Design Certification..................... | | | 0600 | Effluent Limits............................ | | |
| 0700 | Surface Water............................ | | | 0800 | Ground Water............................. | | |
| 0900 | Blasting Procedures.................... | | | 1000 | Haul Roads................................ | | |
| 1100 | Refuse Impoundments................. | | | 1200 | Topsoil Handling.......................... | | |
| 1300 | Backfill / Grading......................... | | | 1400 | Reclamation Schedule................. | | |
| 1500 | Revegetation Requirements......... | | | 1600 | Disposal of Excess Spoil............ | | |
| 1700 | Highwall Elimination.................... | | | 1800 | Downslope Spoil Disposal........... | | |
| 1900 | Postmining Land Use.................. | | | 2000 | Ceased Mining Temporarily.......... | | |
| 2100 | Acid bearing /Toxic Material......... | | | 2200 | Method of Operations.................. | | |
| 2300 | Change of Operator..................... | | | 2400 | Permit Conditions........................ | COM | |
| 2500 | Diversions and Drainage Control.. | | | 2600 | Fugitive Dust Control................... | | |
| 2700 | Subsidence Plan......................... | | | 2800 | Insurance Current....................... | | |
| 2900 | Bonding Current.......................... | | | 3000 | Other Conditions......................... | | |

**WATER QUALITY TESTS**

| Structure ID | Outfall | pH | Fe | Mn | Al | No Flow | Not Const. | Treatment |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| AUTH. COMPANY REPRESENTATIVE | Erman Moore | *Delivered to Erman Moore* |
|---|---|---|
| DELIVERY METHOD / DATE TIME | Hand 3/4/2016 10:53:00 | |
| CERTIFIED MAIL NUMBER | | |
| ADDRESS | PO BOX 1001, 63 CORPORATE CENTRE DR STE 411, SCOTT DEPOT, WV 25560 | |
| WV DEP REP. | John Waggoner | *John Waggoner* |

IN THE CIRCUIT COURT OF WYOMING COUNTY, WEST VIRGINIA

**AVARY H. & BETTY JO BAILEY,**
**JASON A. & RONCHESKI BAILEY,**
**NEWMAN & KATHRINE BROWN,**
**ALGIE D. & KATHERINE COOK,**
**ALGIE R. & PEGGY ANN COOK,**
**DENNIS L. COOK, JR. & MICHELE COOK,**
**DENNIS L. COOK, SR. & BRENDA K. COOK,**
**WILLIAM C. & REGINA COOK,**
**WILLIAM & STEPHANIE COOK,**
**DONNA FRALEY,**
**MAYBETH FRALEY,**
**WESTLEY & JUDY FRALEY,**
**DOYLE LEE & PHYLLIS JOHNSON,**
**GLEN & MARY JOHNSON,**
**ELIZABETH L. KENNEDY,**
**WILLIAM D. & JENNY LAFFERTY,**
**MICHAEL E. MARCUM,**
**PAUL MARCUM,**
**HELEN M. MCGINNIS,**
**ONNIE & VIRGINIA PAYNTER,**
**EARL R. PELPHREY,**
**LARRY & BECKY REED,**
**EVERETT & FREDA SMITH,**
**WILLIAM L. & JESSICA N. STEPP,**
**JACQUELYN A. WHITLEY,**
**BILLY RAY WILLARD,**
**TEDDY & DOROTHY WYKLE,**
     Petitioners,

v.                                              Civil Action No. 15-C-176
                                                Chief Judge Warren R. McGraw

**WEST VIRGINIA DEPARTMENT OF**
**ENVIRONMENTAL PROTECTION and**
**RANDY C. HUFFMAN, in his role as Cabinet**
**Secretary for the West Virginia Department of**
**Environmental Protection,**
     Respondents.

## ORDER GRANTING THE VERIFIED
## PETITION FOR WRIT OF MANDAMUS

On December 2, 2015, came Petitioners, through counsel Kevin W. Thompson and David

R. Barney, Jr. and Respondents West Virginia Department of Environmental Protection

1

(WVDEP) and WVDEP Cabinet Secretary Randy C. Huffman, through counsel Jason E. Wandling, for a hearing regarding Petitioners' September 16, 2015, Verified Petition for Writ of Mandamus for an Order compelling Respondents to issue a water replacement Order for Petitioners, pursuant to West Virginia Code § 22-3-24.

      **WHEREUPON**, the Court, after reviewing the pleadings, hearing testimony, reviewing the hearing exhibits and the arguments of counsel, makes the following findings of facts and conclusions of law:

      1.    Avary H. and Betty Jo Bailey are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern Associated Coal, LLC (Eastern), which they allege contaminated their water well.  Petition at ¶ 1.

      2.    Jason A. and Roncheski Bailey are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 2.

      3.    Newman and Katherine Brown are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 3.

      4.    Algie D. and Katherine Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 4.

5.      Algie R. and Peggy Ann Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 5.

6.      Dennis L. Cook, Jr. and Michele Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 6.

7.      Dennis L. Cook, Sr. and Brenda K. Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 7.

8.      William C. and Regina Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 8.

9.      William and Stephanie Cook are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 9.

10.      Donna Fraley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well.  Petition at ¶ 10.

3

11.     Maybeth Fraley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 11.

12.     Westley and Judy Fraley are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Westley Fraley also was a former employee of Eastern and provided testimony at the hearing. *See* Tr. at pgs. 28-52. Petition at ¶ 12.

13.     Doyle Lee and Phyllis Johnson are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 13.

14.     Glen and Mary Johnson are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 14.

15.     Elizabeth L. Kennedy is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 15.

16.     William D. and Jenny Lafferty are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 16.

17.    Michael E. Marcum is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well.  Petition at ¶ 17.

18.    Paul Marcum is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well.  Petition at ¶ 18.

19.    Helen M. McGinnis is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well.  Petition at ¶ 19.

20.    Onnie and Virginia Paynter are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well.  Petition at ¶ 20.

21.    Earl R. Pelphrey is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated his water well.  Petition at ¶ 21.

22.    Larry and Becky Reed are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well.  Petition at ¶ 22.

23.    Everett and Freda Smith are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted

5

impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 23.

24.     William L. and Jessica N. Stepp are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 24.

25.     Jacquelyn A. Whitley is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which she alleges contaminated her water well. Petition at ¶ 25.

26.     Billy Ray Willard is a resident of Clear Fork, Wyoming County, West Virginia, who is above the age of majority, downstream from a permitted impoundment operated by Eastern which he alleges contaminated his water well. Petition at ¶ 26.

27.     Teddy and Dorothy Wykle are a married couple, both above the age of majority, who reside along Clear Fork, in Wyoming County, West Virginia, downstream from a permitted impoundment operated by Eastern which they allege contaminated their water well. Petition at ¶ 27.

28.     The West Virginia Department of Environmental Protection (WVDEP) is a political sub-division of the State of West Virginia and it is the agency charged with enforcement of the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA), West Virginia Code § 22-3-1, *et seq.*

29.     Randy C. Huffman is the Cabinet Secretary for the WVDEP and he is charged with enforcement of the WVSCMRA, West Virginia Code § 22-3-1, *et seq.*

30.     Eastern, is a West Virginia company and it is the permittee authorized by Respondent WVDEP to conduct surface mine operations, Kopperston Number 4, atop Coal Mountain, in Wyoming County, West Virginia, pursuant to permits O-0019-83, P-400111, U-0047-83, U-0143-82 and U-4003-94. *See* Petitioners' Hearing Exhibits 1, 4, 5 and 6 and Tr. at pg. 29.

31.     Pursuant to these permits, Eastern built, operated and later filled in a large impoundment near the head of Crany Branch which is a tributary of Clear Fork. Eastern brought this area under permit in 1983. Tr. at pg. 126. Mr. Fraley, a former Eastern employee, testified that the prep plant continued to inject slurry until it was closed in about August of 1998. *See* Tr. at pgs. 35-48. The permitted fill for this site was reclaimed in the late 1990's. Tr. at pg. 103.

32.     Notwithstanding, adjacent to Eastern's impoundment is an abandoned slate dump which is a pre-WVSCMRA site, meaning it existed prior to enactment of the 1977 statute and was not brought under Eastern's permit. *See* Tr. at pgs. 56-59 and 123-135.  However, Mr. Fraley, who was the UMWA chairman of the Mine Committee and safety committee at the site, testified that Eastern used this alleged slate dump until 1985. *See* Tr. at pgs. 35-41.

33.     Petitioners allege that they depend on water wells for all of their domestic needs including drinking, bathing, cooking, cleaning and laundry.  Petitioners allege that, over the years, the water quality of the wells of Petitioners and their neighbors degraded.

34.     In the Verified Petition, Petitioners alleged claims and sought injunctive relief, pursuant to the Citizen's Suit Provision of the WVSCMRA, West Virginia Code § 22-3-25(a)(2) because Respondents failed to perform non-discretionary duties.  Petition at ¶s 53-58.  In addition, Petitioners petitioned this Court for a Writ of Mandamus, pursuant to West Virginia Code § 53-1-2 and Article VIII, Section 6, of the West Virginia Constitution.  Petition at ¶s 59-

65. Petitioners also allege that there are no other adequate means for them to obtain the desired relief, other than through the Verified Petition. Petition at ¶ 65.

35.    Petitioners allege that Respondents have a legal duty, pursuant to West Virginia Code § 22-3-17(a), to do that which Petitioners seek to compel through this Verified Petition. Petition at ¶s 55-56 and 64.  Namely, to force Eastern, as a term of its permit, to provide and honor Petitioners' right of water replacement pursuant to West Virginia Code § 22-3-24. *Id*. West Virginia Code § 22-3-17(a) mandates that the Director "shall" issue a Notice of Violation if an operator is not in compliance with a provision of a statute, rule or permit which constitutes a non-discretionary duty. *Id*.

36.    Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water sources, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation to Eastern, pursuant to West Virginia Code § 22-3-17(a), for Eastern's violation of the water replacement provisions of West Virginia Code § 22-3-24. Petition at ¶s 57 and 64.

37.    Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water source, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation for Eastern's violation of the General Environmental Performance Standards set forth in West Virginia Code § 22-3-13(b)(10) which require the permittee, being Eastern, to conduct operations in such a manner as to minimize the impact on the hydrologic balance. *Id*.

38.    Petitioners allege that, in the face of overwhelming evidence of Eastern's mining impacts on their water source, Respondents failed to perform a non-discretionary duty to issue a Notice of Violation for Eastern's failure to protect offsite water sources as set forth in West Virginia Code of State Regulations § 32-2-14.5. *Id*.

8

39.     With respect to the specific facts of the case, on November 4, 2011, April 13, 2013 and May 22, 2015, Petitioners filed notices with Respondent WVDEP, pursuant to West Virginia Code § 22-3-24 and § 22-3-25, alleging that Eastern's impoundment contaminated their water supplies. *See* SCMRA Notices attached to the Verified Petition as "Exhibit 1;" *see also* Petitioners' Hearing Exhibits 3, 4 and 5 and Tr. at pg. 33. The proceedings were stayed because of the bankruptcy of Patriot Coal Corporation, Eastern's parent company. *See* Tr. at pgs. 10, 12, 13, 53-56 and Petitioners' Hearing Exhibit 9.

40.     In response, the WVDEP conducted an investigation that included two (2) water sampling expeditions in 2011 and 2012. *See* WVDEP water testing results attached to the Verified Petition as "Exhibit 2;" *see also* Petitioners' Hearing Exhibits 10 and 11 and Tr. at pgs. 59 and 70.

41.     Additionally, representatives of the WVDEP accompanied Petitioner Westley Fraley, Petitioners' expert witness D. Scott Simonton, PE, PhD and counsel on an inspection of the permitted impoundment which revealed several areas where contaminated groundwater, with iron and aluminum, were leaching out of the side of the impoundment. *See* Tr. at pgs. 42-47, 87 and 118-122; *see also* Petitioners' Hearing Exhibits 7 and 10.

42.     WVDEP Environmental Specialist III Dustin Johnson testified that there were numerous exceedances above the applicable Environmental Protection Agency (EPA) drinking water standards. *See* Tr. at pgs. 59-76, 119-122; *see also* Petitioners' Hearing Exhibit 10.

43.     The WVDEP's testing revealed that some of the Petitioners had well water results exceeding both the applicable EPA drinking water standards and the expected natural background levels anticipated for the area.

44.   According to Mr. Johnson, Petitioner Elizabeth L. Kennedy's well water contained iron more than ten times above and exceedances of manganese above the applicable EPA drinking water standards. Petitioner Helen M. McGinnis well water contained iron more than ten times and manganese at three times above the applicable EPA drinking water standards. Petitioners Avary and Betty Jo Bailey's water contained iron more than five times and manganese at four times above the applicable EPA drinking water standards. Petitioners Doyle Lee and Phyllis Johnson's water contained iron more than thirty times above the applicable EPA drinking water standards. Petitioners William and Regina Cook's water contained iron more than forty times above the applicable EPA drinking water standards. Petitioners Westley and Judy Fraley's well water contained iron more than five times and manganese at four times above the applicable EPA drinking water standards. Additionally, The Fraley's well tests revealed elevated levels of arsenic. Petitioner Paul Marcum's well water contained an exceedance of iron and manganese at three times above the applicable EPA drinking water standards. Petitioners Newman and Kathrine Brown's water contained iron more than twenty times above the applicable EPA drinking water standards. Petitioner Jacquelyn A. Whitley's water contained iron more than three times above the applicable EPA drinking water standards. *Id.*

45.   In addition, nearby residents Jerry and Brenda Hutchinson (non-Petitioners) live the closest to the subject impoundment. The Hutchison's well water results are among the worst in the area, testing greater than thirty times higher for iron and greater than twenty times higher for manganese than the applicable EPA drinking water standards. Additionally, testing of the Hutchison's well revealed elevated levels of lead and arsenic. *Id.* Similarly, the well water of a local church in Crany (a non-Petitioner) contained an exceedance of iron at eight times above the applicable EPA drinking water standards. Tr. at pg. 67.

10

46.     Furthermore, in March of 2011, Petitioner Donna Fraley, during a groundwater inventory, reported that her water quality was "good" and the contemporaneous water sampling at that time indicated a low level of iron in her well water. However, the 2012 water sampling, one year later, indicated that Ms. Fraley's water contained iron more than ten times above the applicable EPA drinking water standards. *See* Tr. at pgs. 70-75 and 94; *see also* Petitioners' Hearing Exhibits 10 and 11.

47.     Notwithstanding, on May 22, 2013, the WVDEP terminated its complaint investigation in complete abrogation of all of the scientific evidence uncovered by the sampling and testing events conducted in the area without ordering Eastern to provide replacement water pursuant to West Virginia Code § 22-3-24 in the form of emergency replacement water, temporary replacement water and permanent water. *See* WVDEP complaint termination attached to the Verified Petition as "Exhibit 5" and Petitioners' Hearing Exhibit 9.  According to Mr. Johnson, there was nothing to connect the exceedances to a violation. *See* Tr. at pgs. 56-59 and 86; Petitioners' Hearing Exhibit 9.  Mr. Johnson explained that, after consulting with inspectors and others, he believed that the abandoned slate dump adjacent to Eastern's impoundment was the cause of the water standard exceedances, not anything related to Eastern's permit, including the impoundment. *See* Tr. at pgs. 56-59 and 123-135.  Mr. Johnson also did not believe there was any evidence of seepage from the impoundment which would contaminate the Petitioners' well water. Tr. at pg. 124.

48.     According to Mr. Johnson, his position was justified because the water testing at outlet 13, the outlet for the surface water coming off the face of the impoundment, was in compliance with applicable standards. Tr. at pgs. 67-68 and 123.  However, the water coming from this outlet is treated before it flows out of the outlet. *Id.*  Dr. Simonton testified that there

11

have been violations from this outlet and not all of the water in the system is going through this outlet. Tr. at pgs. 88-89. In addition, the water from this outlet is not drinkable, even when in compliance, because compliance only concerns the ability to treat the water. *Id.*

49.     Mr. Johnson's report also indicated that the contamination may not be mining related because of the sulfate levels detected in the water. *See* Petitioners' Hearing Exhibit 9 and Tr. at pg. 86.

50.     With respect to the history of the site, Mr. Johnson testified that Eastern, with the exception of the abandoned slate dump, was brought under its permit in about 1983. *See* Tr. at pg. 126. However, Mr. Johnson acknowledged that it would be a violation of the permit if Eastern were to have worked outside of the permitted boundary which was described as a "wild cat" permit where there was activity on an area that was not permitted by the operator. *See* Tr. at pgs. 130-131. Mr. Fraley testified that when he was employed at Eastern and was the UMWA chairman of the Mine Committee and safety committee, Eastern used this slate dump until 1985. *See* Tr. at pgs. 35-41. As such, there was testimony that Eastern violated its permit by working outside of the permitted boundary, by Mr. Johnson's own testimony, in the identified area of contamination.

51.     D. Scott Simonton, PE, PhD, is an environmental engineering professor at Marshall University who was retained by the Petitioners. Dr. Simonton was recognized by the Court, without any objection, as an expert in the fields of environmental engineering & groundwater contamination related to coal mining. *See* Tr. at pgs. 77-81 and Petitioners' Hearing Exhibit 12.

52.     Dr. Simonton attended each WVDEP testing event, interviewed all of the Petitioners and attended a conference with WVDEP officials where he explained the mechanisms

by which the subject abandoned impoundment contaminated Petitioners well water. According to Dr. Simonton, Petitioners' well water was contaminated, in part, by Eastern's abandoned impoundment. *See* Report of D. Scott Simonton, PE, PhD, attached to the Verified Petition as "Exhibit 3."

53.     Dr. Simonton opined that the impoundment and the slate dump contributed to the groundwater contamination, but he was not able to articulate any percentage of fault for either structure. Tr. at pgs. 99-108. However, Dr. Simonton opined that the impoundment has a greater mass and area than the slate dump which creates a greater potential for impact. *Id.* Dr. Simonton noted that the slate dump was the greater cause of surface water contamination, but that did not correspond with the groundwater contamination. *Id.* According to Dr. Simonton, the spongy nature of the top of the impoundment allows contaminates to infiltrate the groundwater to a greater degree than the slate dump. *Id.* Consequently, Dr. Simonton opined that the water contamination experienced by Petitioners related to a permit condition which should have been addressed by the Respondents when the Petitioners first made their complaints. *Id.*

54.     Dr. Simonton further explained that the WVDEP testing data indicates surface water quality is degraded significantly by elevated levels of heavy metals in waters downstream from the impoundment as opposed to waters upstream from the impoundment indicating a negative influence exerted on surface water by the impoundment. *See* Tr. at pgs. 59-76 and 81-114; *see also* Petitioners' Hearing Exhibit 10. The levels of sulfates, iron and manganese in the water are far above background which is indicative of a mining impact and consistent with contamination emanating from the permitted impoundment. Tr. at pgs. 95-97.

13

55.     According to Dr. Simonton, the water generally is not potable.  *See* Tr. at pg. 81. Slurry is in the system because of the interconnectivity of the system.  Tr. at pgs. 89-90 and 123-124.  Hydraulic head pressure is created from Eastern's impoundment which then forces water to flow in a northwest direction from the impoundment toward the Petitioners' homes and water wells.  Tr. at pgs. 89-93 and 102.  Dr. Simonton explained that the surface water (the creek) and groundwater intermingle, but the surface water is not used by the Petitioners and it does not provide any information about the system.  Tr. at pgs. 95-97.  The issue of concern is the hydraulic pressure and the disruption of the hydraulic valves which are permit conditions.  *See Id.*  To a reasonable degree of scientific certainty, Dr. Simonton opined that based upon the mining history, the sample results, the odor of the water and testimony of the witnesses indicated that Eastern's impoundment and its activities impacted the hydrologic balance which necessitates Petitioners' need for a replacement water source.  *See Id.*

56.     With respect to sulfate levels, Dr. Simonton further explained that the sulfate levels detected in the water samples are an indicator of mining impact.  Tr. at pgs. 82-87 and 109-113.  According to Dr. Simonton, who has published an article on hydrogen sulfide, sulfate will precipitate out of the system and will be transformed or reduced to sulfide which then will become a solid or gas.  *Id.*  Thus, the heavy metals in the well water interact with iron and sulfate reducing bacteria which releases malodourous toxic hydrogen sulfide gas into the Petitioners' homes.  *Id.*  In fact, Mr. Fraley produced a bottle of water from his well, Petitioners' Hearing Exhibit 2, which Mr. Fraley and Dr. Simonton smelled during their respective testimonies and confirmed the odor of hydrogen sulfide.  *See* Petitioners' Hearing Exhibit 2 and Tr. at pgs. 30-33 and 85.  Besides having a noxious odor, hydrogen sulfide also has neurotoxic properties.[1]  Tr. at

---

[1]     Stephen King, PhD, a toxicologist retained by Petitioners, issued a report explaining the health and cancer risks associated with using the well water in the affected area, including a risk of cancer coming from the

pgs. 82-87 and 109-113. Dr. Simonton believed the presence of the hydrogen sulfide gas is an indicator of Eastern's mining impact on Petitioners' water sources, even though the level of sulfate concentration may not have exceeded any applicable standard.

57.   While Respondents dispute that Petitioners have a clear and indisputable right to the issuance of the writ, West Virginia's mining laws make it clear that citizens living near permitted coal mining operations have an indisputable right to water replacement if there is evidence that the permitted mine contaminated their groundwater. In this case, Petitioners' evidence of contamination demonstrates that Eastern's permitted mining operations impacted their sources of water. *See* Tr. at pgs. 136-137. The contamination emanating from Eastern's permitted impoundment negatively impacted Petitioners' ability to use their well water safely for domestic purposes.

58.   Therefore, the Court hereby **FINDS** that, based upon expert witness testimony, the evidence adduced in this case warrants the allegations of the Petitioners. The Court believes that Respondents, in accordance with West Virginia Code § 22-3-24(d), should require Eastern to provide emergency water and temporary water replacement to Petitioners until such time as Eastern can find a permanent replacement water supply or cause the extension of municipal water line to Petitioners' home.

59.   Moreover, to the extent Petitioners are seeking injunctive relief, the Court **FINDS** that Petitioners have met their burden for injunctive relief. Based upon the foregoing, the Court **FINDS** that (1) there is a likelihood of irreparable harm to Petitioners without the injunction, (2) there is a minor or *de minimis* likelihood of harm to Respondents with an injunction; (3) Petitioners' have a likelihood of success on the merits; and (4) there public interest in upholding

---

elevated levels of arsenic and lead in the water. *See* Report of Stephen King, PhD, attached to the Verified Petition as "Exhibit 4 (at ¶ 46)."

West Virginia's mining laws. *See Jefferson Co. Bd. of Educ. v. Jefferson Co. Educ. Assoc.*, 183 W.Va. 15, 24, 393 S.E. 2d 653, 662 (1990) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985)); *See also Camden-Clark Mem. Hosp. Corp. v. Turner*, 212 W.Va. 752, 757, 575 S.E.2d 362, 367 (2002).

60.     The Court believes that emergency water replacement water typically is provided in five-gallon jugs for drinking and cooking purposes. *See generally Clifford Belcher, et al. v. Dynamic Energy, Inc., et al.*, Wyoming Co. CAN 14-C-67 (Order entered on December 2, 2014).

61.     The Court believes that temporary replacement water typically takes the form of a 1,500 gallon tank plumbed into homes for bathing, laundry and dishwashing purposes. *See generally Clifford Belcher, et al. v. Dynamic Energy, Inc., et al.*, Wyoming Co. CAN 14-C-67 (Order entered on December 2, 2014).

62.     The provision of a permanent, safe, clean water source may be achieved easily because there is a local city water line less than one-quarter mile from the residence of Petitioners Avary and Betty Jo Bailey.

**WHEREFORE**, based upon the foregoing, the Court is of the opinion to and hereby does **GRANT** Petitioners' Verified Petition for Writ of Mandamus. Accordingly, Respondents, pursuant to West Virginia Code § 22-3-24(d), **SHALL** require Eastern to provide emergency water and temporary water replacement to Petitioners until such time as Eastern can establish a permanent water supply for them. Furthermore, the Court **ORDERS** and **DIRECTS** as follows:

1.     That within twenty-four (24) hours of notice of this Order, Respondents shall order Eastern to provide emergency drinking water to each Petitioner for family and domestic use.

2.      That within seventy-two (72) hours of notice of this Order, Respondents shall order Eastern is to provide temporary potable water for use by Petitioners in their households and homesteads.

3.      That counsel for the parties are to cooperate on the details for the provision of replacement water.

4.      That Petitioners are entitled to the peaceful enjoyment of their homes and, in accordance with West Virginia Code § 22-3-25(d), no bond shall be required of Petitioners.

All objections and exceptions to this Order are noted and preserved for the record.

This matter otherwise is continued for further proceedings before the Court regarding Petitioners' attorney fees and expenses.

The Clerk is **ORDERED** to send certified copies of this Order to all parties of record.

Entered on this the _____ day of _____, 2016.

**THE HONORABLE WARREN R. MCGRAW**
**Chief Judge, 27th Judicial Circuit**

17

Prepared By:

Kevin W. Thompson, Esquire (W.Va. Bar No. 5062)
David R. Barney, Jr., Esquire (W.Va. Bar No. 7958)
Thompson Barney
2030 Kanawha Boulevard, East
Charleston, West Virginia 25311
Telephone: (304) 343-4401
Facsimile: (304) 343-4405
          *Counsel for Petitioners*

Reviewed and Objected to By:

Jason Q. Wandling, Esquire (W.Va. Bar No. 9259)
West Virginia Department of Environmental Protection
Office of Legal Services
601 57th Street, SE
Charleston, West Virginia 25304
Telephone: (304) 926-0499, ext. 1446
Facsimile: (304) 926-0461
          *Counsel for Respondents*

18